IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) 1:10cv667 (LMB/TRJ) |
| LEE B. FARKAS | ) |
| Defendant. | ) |

DEFENDANT LEE B. FARKAS OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REQUEST FOR ADDITIONAL TIME
TO SUBMIT BRIEF IN SUPPORT OF DEFENDANT LEE B. FARKAS'
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Lee Farkas, pro se, because the USDOJ, SEC, FDIC, and SIGTARP, all agencies of the United States Government, have successfully, severally and jointly deprived Defendant of funds to pay attorneys since even before his indictment. First, the FDIC, which later was intimately involved in the prosecution of Defendant, effectively froze Defendant's bank accounts before any indictments were issued. Then, the District Court's pre-trial restraining order was issued, in spite of Defendant's request for a hearing, with no benefit of such a hearing, as should have been provided under United States v Farmer, 274 F.3d 800 (4th circuit 2001) (holding that a criminal defendant has a due process right to a hearing to challenge probable cause as to untainted assets seized pursuant to a civil forfeiture when those assets are needed to hire counsel in his criminal case). This combined with ruling by the District Court that, all together, have totally cut off Defendant from any funds available to defend himself in the criminal case and this case; and violated his sixth amendment rights to counsel of his choice as well as the doctrine of fundamental fiarness. Further, the Defendant has suffered irreparable damage due to his inability to mount a viable direct appeal of his case due to the lack of funds available to him to pay attorneys. Judge Brinkema (see Lee Benltey Farkas v. National Union Fire Insurance Company of Pittsburgh, PA 1:11cv529(LMB/IDD)) stated

referring to the Defendant, that "he cannot show irreparable harm because the Fourth Circuit appointed counsel through the Criminal Justice Act to represent him on appeal." inferring that irreparable harm HAS been done, since the statement is totally false. The deprivation of funds HAS done irreparable harm. In fact, when Judge Brinkema appointed CJA counsel to represent Defendant in his criminal case, over his oral and written objections, she required Defendant to pay back every cent to the Court before any money could be paid to private lawyers. Contrary to the customary arrangements of repayment of CJA funds, the Judge admonished the Defendant that if he paid any money to any lawyers without first repaying the Court for funds advanced to her own appointed CJA lawyer that she would immediately put Defendant in jail. Also, the Judge's unfair decision to allow the government to prosecute Defendant in Alexandria, VA instead of Florida and further ruled that Defendant had to be present for every hearing in the pre-trial case, caused Defendant to have to bear overwhelming travel and lodging expenses, exceeding $50,000 during his trial alone. This after the government took virtually all of Defendant's assets. This hardly seems fair.

In order to be a "favored mechanism" to secure the just, speedy and inexpensive determination of a case, summary judgment, according tothe United State Court of Apeals for the 4th circuit, must satisfy the question of whether the party opposing the matter for summary judgment has presented genuinely disputed facts which remain to be tried. That is surely the case here, and with the Court's permission, will be detailed in a forthcoming supporting brief.

Further, for the Court to rule in favor of Plaintiff's motion, it must decide that the Defendant has had a full and fair opportunity to litigate the issues, which Defendant defies a rational, thinking person to conclude about Defendant's criminal trial, which was anything but fair due to multiple factors, including, but certainly not limited to the Court's unwillingness to grant a one day delay in testimony, the effect of which disallowed Defendant's counsel to put up approximately 22 of the approximately 24

witnesses scheduled to testify for the defense, completely gutting the entire defense case; in which 59 million pages of evidence were produced by prosecutors and provided only electronically, and the Court only allowed Defendant one 72 year old, semi-computer illeterate attorney and two part time paralegals. This came after the court issued the restraining order relative to ALL of Defendant's assets, rendering him totally uanble to pay private lawyers, and TBW, acting as an agent for the government, succesfully delayed Defendant's access to Directors and Officers liability policy proceeds that eventually paid private counsel at his criminal trial. Combined with the Court's myopic insistance on pushing the case ahead at breakneck speed, the delay in getting the D & O proceeds made it impossible for Defendant to receive effective assistance of counsel as provided by the United States Constitution. The Court's favor of its calendar over the Defendant's rights combined with TBW's self serving delays sealed Defendant's fate.

In what the government describes as "the most complicated fraud trial they have had in the district" and "the most significant criminal prosecution to date arising from the financial crisis" (SIGTARP press release 4/20/11), the Court decided that, even though the DOJ was spending millions upon millions of dollars to prosecute the Defendant, that he should be able to defend himself with the aforemantioned CJA appointed team (one 72 year old lawyer and two part time paralegals, located over 1,000 miles from his home) in the face of a literal 59 million page mountain of electronically accessible evidence.

The fact that the Judge would not allow the Defendant to offer testimony which would have shown that the figures used in the indictment were highly exaggerated or even totally fictitious was prejudicial to the Defendant. Testimony, had it been allowed, would have shown that there need not have been any loss at all. Every witness testified that the "collateral" upon which Ms. Kissick relied, existed, but Defendant was not allowed to pursue any questions as the Judge did not want to "waste the Jury's time". Defendant intends to fully explore and brief the Court on the following issues, given the time to complete the brief as requested:

1) Were the assets characterized as "securities" actually securities as defined in Section 3(a)(78) of the Securities Act of 1934?

2) What were the actual representations and warranties provided by TBW regarding the quality of the loans and other collateral? What were eligible assets under the COLB and AOT agreements between TBW and Colonial Bank?

3) Where and when were allegations of "kiting" made in the criminal trial?

4) How much was the "hole"? The Judge refused to allow any Defense questions related to it in the criminal trial.

5) What knowledge did Defendant have of Colonial's requirements for SEC reporting?

6) The characterization of the $300 million proposed investment in the Plaintiff's brief is factually incorrect.

7) Plaintiff's brief states that Colonial was "unaware of Farkas' fraud" a fact that is not supported by trial testimony.

8) No testimony at the trila about Colonial Bank's financial health, even totally discounting their relationship with TBW was heard. This is critical.

9) What were the contents of the zip or thumb drive that Defendant delivered to Colonial Bank?

10) The Government seized TBW's single largest asset worth a BILLION DOLLARS, its servicing portfolio, and paid TBW nothing for it. Testimony regarding the effects of this on Colonial Bank and TBW was not allowed at the trial, but is critically important to this case.

Defendant was offered, by the Plaintiff, a settlement in this case. To

obtain an agreement, Defendant was asked to agree: "Defendant acknowledges the conviction for related criminal conduct described in paragraph 2 above, and agrees: (i) not to take any action or to make or permit to be made any public statemnt denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint."

Because Defendant knows that he is not guilty of Securities Fraud, Bank Fraud or Wire Fraud in spite of the erroneous jury verdict, obtained by prosecutors spending millions and miillions of government dollars and by violating his Constitutional rights, Defendant was uanble to settle this matter with the Plaintiff.

For the above reasons, Defendant asks this Court to grant Defendant 180 additional days to submit his brief in support of his opposition to the Plaintiff's motion for summary judgment, stay Plaintiff's motion for summary judgment pending filing of Defendant's brief and grant whatever other relief the Court feels is appropriate. The 180 days are necessary because Defendant, being incarcerated in a Federal Prison, has no access to the basic research materials necessary to properly complete his brief, and has very few materials in his possession.

Respectfully submitted this First day of February, 2013.

_____
Lee Bentley Farkas