IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SECURITIES AND EXCHANGE )
COMMISSION, )
 )
      Plaintiff )
 ) 1:10-cv-667 (LMB/TRJ)
v. )
 )
LEE B. FARKAS, )
 )
      Defendant. )

FILED MAY 15 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Before the Court is plaintiff Securities and Exchange Commission's ("SEC") Motion for Summary Judgment [Dkt. No. 29], which was filed on January 14, 2013 and provided defendant pro se Lee B. Farkas ("Farkas") with the proper notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). After receiving two extensions of time in which to submit a response, see Dkt. Nos. 38 & 40, Farkas filed an opposition brief, to which the SEC has replied. Having reviewed the issues raised in plaintiff's motion, the Court has determined that oral argument will not assist the decisional process, and will grant summary judgment to the plaintiff for the reasons discussed below.

### I. BACKGROUND

This civil action follows upon the defendant's conviction in this district for conspiracy to hide the financial troubles of Taylor, Bean, & Whitaker Mortgage Corporation ("TBW") by

arranging for TBW to sell at least $1.6 billion in fictitious and impaired residential mortgage loans and mortgage-backed securities to investors such as Colonial Bank. See United States v. Farkas, No. 1:10-cr-200 (E.D. Va. filed June 15, 2010). On April 19, 2011, after a two-week trial, a jury found Farkas guilty of conspiracy to commit bank, wire, and securities fraud, as well as six counts of bank fraud, four counts of wire fraud, and three counts of securities fraud, in violation of 18 U.S.C. §§ 1349, 1344, 1343, 1348, and 2. Id., Dkt. No. 263. On June 30, 2011, Farkas was sentenced to thirty years imprisonment, individually ordered to pay restitution of more than $38 million, and held jointly and severally liable for restitution payments totaling more than $3.5 billion. Id., Dkt. Nos. 300, 301, 351. His conviction and sentence were upheld on appeal. Cf. United States v. Farkas, 474 F. App'x 349 (4th Cir. June 20, 2012) (unpublished opinion).

On June 16, 2010, the day after the filing of the indictment, the SEC filed the instant civil enforcement action alleging that the misconduct by Farkas described in the indictment also constituted violations of federal securities laws. In the pending summary judgment motion, the SEC invokes the doctrine of collateral estoppel to argue that Farkas's

criminal convictions establish his liability under anti-fraud,[1] recordkeeping,[2] and reporting[3] provisions of federal securities laws. In its prayer for relief, the SEC seeks a judgment that Farkas committed the alleged violations and a permanent injunction against Farkas and his agents, servants, employees, attorneys, and "those persons in active concert or participation with them who receive actual notice of the order of injunction" from committing future violations, as well as an order prohibiting Farkas from acting as an officer or director of any issuer of securities, serving in a senior management or control position at any mortgage-related company or other financial institution, and holding any position involving financial

---

[1] Counts I-IV of the Complaint for Injunctive and Other Relief ("Complaint") allege fraud and aiding and abetting fraud in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q et seq., Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j et seq., and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

[2] Counts V-VIII of the Complaint allege internal accounting controls violations, aiding and abetting internal accounting controls violations, and aiding and abetting books and records violations in contravention of Sections 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5) of the Exchange Act, see 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(2)(B), 78m(b)(5), and Exchange Act Rules 13b2-1 and 13b2-2(b), see 17 C.F.R. §§ 240.13b2-1, 240.13b2-2.

[3] Count IX of the Complaint alleges aiding and abetting reporting violations under Rules promulgated pursuant to Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), including Exchange Act Rules 13a-1, 13a-13(a), 13a-11(a), and 12b-20. See 17 C.F.R. §§ 240.13a-1, 240.13a-13(a), 240.13a-11, 240.12b-20.

reporting or disclosure in a public company.[4] Compl. at 20, 26-28.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but must 'set forth facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Although the Court must view the record "in the light most favorable to the nonmoving party," Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 324 (4th Cir. 2012), it must ultimately determine "whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to

---

[4] The SEC's representation that it is not seeking disgorgement, prejudgment interest, or civil penalties is inconsistent with sections III and VI of the prayer for relief in its Complaint. Compare Br. in Supp. of Pl. SEC's Mot. for Summ. J. ("Mot. for Summ. J."), at 21, and SEC's Reply Br. to Def.'s Br. in Opp'n to Mot. for Summ. J. ("Reply"), at 4, with Compl. at 27. Given the extensive financial penalties and multiple forfeiture orders that have already been imposed on Farkas in the criminal case, the Court deems the SEC's representations to be effective amendments of its Complaint and will not include such relief in its judgment. Cf. Fed. R. Civ. P. 15(a) (stating that leave to amend a pleading should be freely given "when justice so requires").

4

be tried." Thompson Everett, Inc. v. Nat'l Cable Adver. L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). In the absence of such genuinely disputed facts, "the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." Id.

## III. DISCUSSION

"For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998).

In his response to the SEC's motion, Farkas admits that "the SEC's complaint is related to the grand jury indictment," but opposes the application of collateral estoppel on two narrow grounds. Br. in Supp. of Def.'s Mot. in Opp'n to Pl.'s Mot. for Summ. J. ("Opp'n"), at 2. First, he argues that collateral estoppel does not apply because the fraud-related issues alleged in the Complaint are not identical to the ones litigated in the

criminal case. Id. at 8-9. Specifically, he claims that "[t]he assets that were the subject of the indictment were mortgage loans, or pools of mortgage loans," and not "securities" within the meaning of the anti-fraud securities statutes at issue in the Complaint, see id. at 2-3, 5-6, and also that because the jury never determined "[t]he amount of the alleged fraud," it never determined whether Farkas's misstatements or omissions were "material" under federal securities law, see id. at 3, 6-7, 12-13. Second, Farkas argues that the SEC has not satisfied the final requirement of collateral estoppel because he "had no opportunity to litigate" the issue of materiality at trial. Id. at 12-13.

A. Identical Issues

Farkas asserts that "mortgage loans, or participation interests in mortgage loans or pools of mortgage loans" do not fall within the legal definition of "securities." Id. at 6. As support, he repeatedly cites a state court's ruling that a certain loan participation agreement was not a security or investment, but rather a transfer of an interest in a mortgage obligation. See id. at 3, 6, 9 (quoting Schroder Bank & Trust Co. v. Metro. Sav. Bank, 117 N.Y. App. Div. 2d 515, 516 (N.Y. Sup. Ct. 1986)).

The Schroder Bank & Trust case holds no precedential value in this jurisdiction. Moreover, the question of whether

6

interests in mortgage loan pools constitute securities was clearly decided by the jury in the criminal case. Specifically, the jury was instructed that

> [t]he term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement, or in general, any instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing.

No. 1:10-cr-200, Trial Tr. [Dkt. No. 358] at 163:24-164:5. The jury found beyond a reasonable doubt that Farkas committed the alleged fraud "in connection with" securities. Cf. id. at 144:19-22, 162:25-163:3. Moreover, Farkas's indictment referred to interests in pools of loans that "were in the process of being securitized and/or sold to third-party investors" and that were recorded by Colonial Bank "as Securities Purchased under Agreements to Resell." Mot. for Summ. J., Ex. 1, ¶¶ 22-23, 32-33. Farkas never challenged the jury's resolution of this issue on appeal, and the Fourth Circuit affirmed Farkas's criminal conviction for securities fraud, which has become final. See Farkas, 474 F. App'x 349.

Liberally construing his pleading,[5] Farkas also appears to argue that the jury in his criminal case never specifically determined that any of his allegedly fraudulent statements or omissions related to "material" facts, and therefore that any civil liability for violations of securities fraud statutes requires a materiality finding that differs from the materiality issue in the criminal case. Cf. 17 C.F.R. § 240.10b-5(b). Farkas is mistaken; the jury in his criminal case was specifically instructed that materiality was an essential element of the securities fraud charges, and obviously found materiality in finding Farkas guilty beyond a reasonable doubt.[6]

---

[5] Although Farkas never expressly raised this argument, he suggested the argument when he wrote that "[t]he amount of the alleged fraud was not litigated in the criminal trial, therefore the materiality of the fraud can not [sic] be determined." Opp'n at 12. On this basis he argues that the SEC's conclusion "that the fraud issues in the criminal case were indeed identical to those in the civil enforcement action is not true." Id. Because the pleadings of pro se litigants are entitled to a liberal construction, this argument has been considered. See, e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

[6] The jury was instructed as follows:

> To find a material fact or a material omission, the government must prove beyond a reasonable doubt that the fact misstated or the fact omitted was of such importance that it could reasonably be expected to cause or to induce a person to act or invest or to cause or to induce a person not to act or invest. The bank, wire, and securities fraud statutes, . . . , are concerned only with such material misstatements or such material omissions and do not cover minor or meaningless or unimportant ones.

Contrary to Farkas's arguments, it is clear that with respect to the securities law violations alleged in Counts I through IV of the indictment, see supra at n.1, the jury found beyond a reasonable doubt not only that Farkas committed misconduct "in connection" with securities, but also that his misconduct was material to the fraud and that he acted with the requisite scienter to prove the securities fraud violations.[7] With regard to the recordkeeping-related charges in Counts V through VIII, see supra at n.2, the SEC properly highlights portions of the indictment that detail how Farkas's fraudulent scheme was material in causing Colonial Bank to fail to keep records accurately reflecting its assets in violation of Exchange Act Section 13(b)(2)(A), see 15 U.S.C. § 78m(b)(2)(A); circumventing Colonial Bank's system of accounting controls, resulting in materially false financial statements in violation of Exchange Act Sections 13(b)(2)(B) and 13(b)(5), see id. at

---

No. 1:10-cr-200, Trial Tr. at 167:21-168:6.

[7] The jury was instructed that to convict Farkas of securities fraud, it had to find that he "knowingly executed or attempted to execute a scheme or artifice to defraud any person" and "did so with the intent to defraud," meaning that he "act[ed] knowingly and with the intention or the purpose to deceive or to cheat." No. 1:10-cr-200, Trial Tr. at 162:20-24, 166:11-13. Counts I, III, and IV of the SEC's Complaint allege securities fraud violations that require proof of scienter. See Compl. at 19-22; Aaron v. Sec. & Exch. Comm'n, 446 U.S. 680 (1980) (finding that scienter is required to prove violations of securities laws under Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5, but not under Sections 17(a)(2) and (3) of the Securities Act).

9

§§ 78m(b)(2)(B), 76m(b)(5); causing Colonial Bank's books and records to be falsified in violation of Exchange Act Rule 13b2-1, see 17 C.F.R. § 240.13b2-1; and misleading auditors in violation of Exchange Act Rule 13b2-2(b), see 17 C.F.R. § 240.13b2-2.[8] Finally, the charge in Count IX of aiding and abetting reporting violations of various Exchange Act Rules addressing the filing of annual reports, quarterly reports, and other material information, see supra at n.3, was encompassed within the three counts of securities fraud for which Farkas was convicted, which alleged that Farkas led Colonial Bank's parent

---

[8] For example, the indictment clearly alleges that Farkas violated Exchange Act Rule 13b2-2(b). See Mot. for Summ. J., Ex. 1, ¶ 35 ("Farkas . . . caused audit confirmations to be sent to Colonial Bank's outside auditors that falsely attested that the balances on the COLB [mortgage loan purchase] and AOT facilities were accurate."). Other recordkeeping violations are covered in the indictment's description of Farkas's conspiracy to commit bank, wire, and securities fraud. See id. ¶¶ 14 (stating that Farkas "engaged in sales to Colonial Bank of mortgage loans that did not exist, that TBW already had sold to others, or that had significantly impaired value," and therefore "caused Colonial Bank to falsely report the value of mortgage loans in its accounting records."); 20 ("Farkas . . . sold tens of millions of dollars worth of what amounted to fake assets to Colonial Bank and caused Colonial Bank to falsely record the value of these assets in its accounting records."); 24 ("As Farkas . . . knew, Colonial Bank held these fictitious Trades in its accounting records at the amount Colonial Bank paid for them."); 26 ("To support these fraudulent transactions, Farkas . . . caused false data and documentation to be sent from TBW to Colonial Bank."); 31-32 ("Colonial Bank reported in its accounting records that these Trades had a total value of approximately $1.47 billion. . . . As a result of the fraud scheme, approximately one-third of the Trades on [Colonial Bank's Mortgage Warehouse Lending Division's Assignment of Trade "(AOT")] Facility were fictitious and had no mortgage loans backing them.").

company, Colonial BancGroup, Inc., to file materially inaccurate Forms 10-K, 10-Q, and 8-K. See Mot. for Summ. J., Ex. 1 at 27. Given the identical nature of the issues resolved in the criminal case and raised in this civil action, this requirement for the application of collateral estoppel is satisfied.

### B. Opportunity to Litigate

Farkas also argues that collateral estoppel should not apply because he was not allowed to raise the amount of loss as a materiality issue at trial. Farkas offers no evidence to support his assertion that he was somehow prevented from litigating the materiality of any misstatements or omissions at trial. In fact, as the record clearly shows, materiality was an issue during the criminal trial and the jury was instructed that the government must prove materiality beyond a reasonable doubt before Farkas could be convicted of securities fraud. See supra at n.6. Moreover, as the SEC correctly observes, the precise extent of Farkas's fraud is irrelevant where the SEC is not seeking disgorgement or civil penalties. See supra at n.4; Reply at 4.

In sum, Farkas fails to provide any basis for finding either that the issues sought to be established by the SEC in this civil action are different from those fully litigated during Farkas's criminal trial, or that Farkas lacked a fair and full opportunity to litigate those issues at trial.

Accordingly, it is appropriate to apply collateral estoppel in this civil action. Given that the application of collateral estoppel leaves no genuine issues of material fact between the parties and establishes that the SEC should be awarded a judgment on all its claims as a matter of law, the plaintiff is entitled to summary judgment.

## IV. CONCLUSION

For the above-stated reasons, the SEC's Motion for Summary Judgment will be granted by an Order issued with this Memorandum Opinion.

Entered this 15th day of May, 2013.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge